# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI-DADE DIVISION

SEAN CASEY, on behalf of
herself and all others similarly situated,

        Plaintiff,

v.

STOCKX, LLC,

        Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Sean Casey ("Plaintiff"), brings this action against Defendant STOCKX LLC ("Defendant"), a Michigan limited liability company, on behalf of himself and all others similarly situated to obtain damages, restitution and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own action, the investigation of his counsel, and the facts that are a matter of public record:

## NATURE OF ACTION

1. Plaintiff brings this class action against Defendant for failing to secure and safeguard the personally identifiable information ("PII") and credit information that Defendant collected and maintained (collectively the "Private Information"), and for failing to provide timely and adequate notice to Plaintiff and other Class members that their information had been stolen and precisely what types of information were stolen (the "Data Breach").

2. Due to Defendant's negligence, the Private Information that Defendant collected and maintained is now in the hands of thieves. Accordingly, Plaintiff brings this action against

Defendant asserting claims for negligence, breach of various States' Data Breach Acts, and Intrusion Upon Seclusion.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), the class contains members of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

5.      This Court has personal jurisdiction over Defendant because portions of the conduct at issue in this case occurred, among other locations, in Florida, and because Defendant's contacts with this district are sufficient to subject it to personal jurisdiction in this District.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to this action occurred in this District, and the Data Breach affected consumers in this District.

## PARTIES

7.      Plaintiff Sean Casey is, and at all times mentioned herein was, an individual citizen of the State of Florida residing in the City of Miami.

8.      Defendant StockX LLC is a Michigan limited liability company with its principal place of business in Detroit, Michigan.

## STOCKX'S BUSINESS

9.      StockX is a Detroit-based company primarily known for its e-commerce platform StockX.com.

10.     The company was founded in 2015 with an emphasis on the sneaker resale market.

11. StockX calls itself the world's first "stock market of things". The platform works by buyers undercutting each other in a fashion similar to the stock market, eventually causing limited items to lose all value.

12. StockX gives consumers a platform to buy and sell like-new merchandise in four categories: sneakers, watches, handbags and street wear. Similar to what Kelley Blue Book is for used cars, StockX is considered one of the leading gauges of market value in the sneaker resale world.

13. The company earns revenue through a flat transaction fee and by taking a percentage of each sale.

14. The website acts as a middleman between buyers and sellers, making otherwise potentially shady resale market transactions purportedly safe and secure.

15. StockX claims that it authenticates all products before they're sent to customers, so they never have to worry about scammers and fake items.

16. Before allowing a consumer to make a bid or purchase, StockX requires users to create an online profile with the company whereby users are prompted to input personal information such as a user's name, email address, password, payment information and other related profile information.

17. Indeed, StockX requires consumers to link to a payment method (PayPal or a credit/debit card) when placing bids.

18. Plaintiff, like millions of other consumers who used Defendant's website, created a profile through which he provided his Private Information in connection with his use of Defendant's online platform.

## THE DATA BREACH

19.     Plaintiff brings this suit on behalf of himself and a Class of similarly situated individuals against Defendant for Defendant's failure to secure and protect Plaintiff's and Class members' Private Information.

20.     In August of 2019, several media outlets reported that more than 6.8 million records were stolen from Defendant's website in May of 2019 by a computer "hacker".[1]

21.     Despite knowing its records had been hacked, Defendant, incredibly, failed to inform its users and instead tried to hide the fact by sending out a notification telling its users to reset their passwords citing "system updates".[2]

22.     However, a prominent technology publication was contacted by an unnamed data breached seller claiming more than 6.8 million records were stolen from Defendant.[3]

23.     What's more, the seller informed the prominent technology publication that the seller had already placed the data for sale, and, in fact, sold it to presumed thieves, on the "dark web".[4]

24.     The "dark web" is a part of the internet that is not indexed by search engines and has been described as a place where a "hotbed" of criminal activity occurs because of its difficulty to trace user activity.[5]

---

[1] https://techcrunch.com/2019/08/03/stockx-hacked-millions-records/, last accessed August of 2019.
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] https://www.csoonline.com/article/3249765/what-is-the-dark-web-how-to-access-it-and-what-youll-find.html, last accessed August of 2019.

25. Indeed, "dark web" users routinely buy and sell credit card numbers, all manners of drugs, guns, and other private information, including the Private Information now at issue in this case.[6]

26. Following its "outing" by the prominent technology publication that it had been "hacked", Defendant eventually admitted as much and then acknowledged that it only prompted users to reset their customer passwords after it was "alerted to suspicious activity" on its site, despite telling users it was a result of "system updates."[7]

27. The stolen data purportedly contained names, email addresses, user passwords and other profile information. The data also included users' device type, such as Android or iPhone, and the software version. Several other internal flags were found in the records, such as whether or not the user was banned or if European users had accepted the company's GDPR message.

28. Following the Data Breach, Plaintiff received notice from Defendant that Plaintiff's and Class members' Private Information stored and maintained by Defendant was subject to unauthorized access by foreign IP addresses.

## DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT

29. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GOA Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[8]

---

[6] *Id.*
[7] https://techcrunch.com/2019/08/01/stockx-security-concerns-reset-passwords/.
[8] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," pg. 2, by U.S. Government Accountability Office, June 2007, at: https://www.gao.gov/new.items/d07737.pdf (last visited April 12, 2019) ("GAO Report").

5

30. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[9]

31. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

32. Identity thieves can also use personal information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and personal information to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's personal information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

33. A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:

---

[9] *See* https://www.identitytheft.gov/Steps (last visited April 12, 2019).



Source: "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/17, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited August 6, 2019).

34. What's more, there may be a time lag between when harm occurs versus when it is discovered, and also between when personal and financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

7

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at page 29.

35. Personal and financial information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

36. Thus, there is a strong probability that entire batches of stolen information have been dumped on the black market, and are yet to be dumped on the black market, meaning Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future.

## PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

37. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

38. Plaintiff and members of the Class have suffered or will suffer actual injury as a direct result of the Data Breach. In addition to fraudulent charges, loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts, and damage to their credit, many victims suffer ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a. Finding fraudulent charges;

    b. Canceling and reissuing credit and debit cards;

    c. Purchasing credit monitoring and identity theft prevention;

    d.    Addressing their inability to withdraw funds linked to compromised accounts;

    e.    Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    f.    Placing "freezes" and "alerts" with credit reporting agencies;

    g.    Spending time on the phone with or at the financial institution to dispute fraudulent charges;

    h.    Contacting their financial institutions and closing or modifying financial accounts;

    i.    Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    j.    Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    k.    Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

39. Moreover, Plaintiff and the Class members have an interest in ensuring that their personal and financial information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

40. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ALLEGATIONS

41. Plaintiff bring this action on behalf of himself and on behalf of all other persons similarly situated ("the Class").

42.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All individuals whose Private Information was provided to Defendant and compromised in the Data Breach. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

43.     <u>Numerosity.</u> Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, it is in the millions.

44.     <u>Commonality.</u> Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a) Whether Defendant unlawfully used, maintained, lost or disclosed Class members' Private Information;

   b) Whether Defendant unreasonably delayed in notifying affected customers of the Data Breach and whether the belated notice was adequate;

   c) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   d) Whether Defendant's conduct was negligent;

   e) Whether Defendant's acts and practices complained of herein amount to acts of intrusion upon seclusion under the laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana,

      Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia;

  f) Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

43. <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Defendant.

44. <u>Adequacy of Representation.</u> Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions.

45. <u>Superiority of Class Action.</u> Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

46. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

47. Defendant has acted or refused to act on grounds that apply generally to the Class, as alleged above, and certification is proper under Rule 23(b)(2).

## CAUSES OF ACTION

## FIRST COUNT

### Negligence
### (On Behalf of Plaintiff and All Class Members)

48. Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

49. Plaintiff brings this claim individually and on behalf of the nationwide Class.

50. Defendant knowingly collected, came into possession of and maintained Plaintiff's Private Information, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

51. Defendant had and continues to have a duty to timely disclose that Plaintiff's Private Information within its possession might have been compromised and precisely the types of information that were compromised.

52. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's Private Information.

53. Defendant systematically failed to provide adequate security for data in its possession.

54. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs by failing to exercise reasonable care in protecting and safeguarding Plaintiff's Private Information within Defendant's possession.

55. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's Private Information.

56. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class members the fact that their Private Information within its possession might have been compromised and precisely the type of information compromised.

57. Defendant's breach of duties owed to Plaintiff and the Class proximately caused Plaintiff's and Class members' Private Information to be compromised.

58. As a result of Defendant's ongoing failure to notify consumers regarding what type of PII has been compromised, consumers are unable to take the necessary precautions to mitigate their damages by preventing future fraud.

59. Defendant's breaches of duty caused Plaintiff to suffer from identity theft, phishing, loss of time and money to monitor his finances for fraud, and loss of control over his PII.

60. As a result of Defendant's negligence and breach of duties, Plaintiff is in danger of imminent harm that his PII, which is still in the possession of third parties, will be used for fraudulent purposes.

61. Plaintiff seeks the award of actual damages on behalf of the Class.

62. In failing to secure Plaintiff's and Class Members' Private Information and promptly notifying them of the Data Breach, Defendant was guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights. Plaintiff therefore, in addition to seeking actual damages, seeks punitive damages on behalf of themselves and the Class.

63. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to consumer information and (2) compelling Defendant to provide detailed and specific disclosure of what types of PII have been compromised as a result of the data breach.

## SECOND COUNT

**Violation of State Data Breach Acts**
**(On Behalf of Plaintiff and All Class Members**
**Who Reside in the Data Breach Statute States)**

64. Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

65. Defendant owns, licenses and/or maintains computerized data that includes Plaintiff's and Class Members' PII.

66. Defendant was required to, but failed, to take all reasonable steps to dispose, or arrange for the disposal, of records within its custody or control containing personal information when the records were no longer to be retained, by shredding, erasing, or otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

67. Defendant's conduct, as alleged above, violated the data breach statutes of many states (the "Data Breach Statute States"), including:

    a. California, Cal. Civ. Code §§ 1798.80 *et. seq.*;

    b. Florida, Fla. Stat. § 501.171, *et seq.*,

    c. Hawaii, Haw. Rev. Stat. § 487N-1–4 (2006);

    d. Illinois, 815 Ill. Comp Stat. Ann. 530/1–/30 (2006);

    e. Louisiana, La. Rev. Stat. § 51:3071-3077 (2005), and L.A.C. 16:III.701;

    f. Michigan, Mich. Comp. Laws Ann. §§ 445.63, 445.65, 445.72 (2006);

    g. New Hampshire, N.H. Rev. Stat. Ann. §§ 359-C:19–C:21, 358-A:4 (2006)., 332-I:1–I:610;

    h. New Jersey, N.J. Stat. Ann. § 56:8-163–66 (2005);

    i. North Carolina, N.C. Gen. Stat. §§ 75-65 (2005); as amended (2009);

j.  Oregon, Or. Rev. Stat. §§ 646A.602, 646A.604, 646A.624 (2011);

k.  Puerto Rico, 10 L.P.R.A. § 4051; 10 L.P.R.A. § 4052 (2005), as amended (2008);

l.  South Carolina, S.C. Code § 1-11-490 (2008); S.C. Code § 39-1-90 (2009);

m.  Virgin Islands, 14 V.I.C. § 2208, et seq. (2005);

n.  Virginia, Va. Code Ann. § 18.2-186.6 (2008); Va. Code Ann. § 32.1–127.1:05 (2011); and

o.  the District of Columbia, D.C. Code § 28-3851 to 28-3853 (2007)

(collectively, the "State Data Breach Acts").

68.  Defendant was required to, but failed, to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

69.  The Data Breach constituted a "breach of the security system" within the meaning of the State Data Breach Acts.

70.  Defendant violated the State Data Breach Acts by unreasonably delaying disclosure of the Data Breach to Plaintiffs and other Class Members, whose PII was, or was reasonably believed to have been, acquired by an unauthorized person.

71.  Upon information and belief, no law enforcement agency instructed Defendant that notification to Plaintiffs and Class Members would impede a criminal investigation.

72.  As a result of Defendant's violation of the State Data Breach Acts, Plaintiffs and Class Members incurred economic damages, including expenses associated with monitoring their personal financial information to prevent further fraud.

73. Plaintiff, individually and on behalf of the Class, seeks all remedies available under the State Data Breach Acts, including, but not limited to: (a) actual damages suffered by Class Members as alleged above; (b) statutory damages for Defendant's willful, intentional, and/or reckless conduct; (c) equitable relief; and (d) reasonable attorneys' fees and costs .

74. Because Defendant was guilty of oppression, fraud or malice, in that it failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights, Plaintiff also seeks punitive damages, individually and on behalf of the Class.

## THIRD COUNT

**Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and All Class Members**
**Who Reside in the Intrusion Upon Seclusion States)**

75. Plaintiff repeats and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

76. Plaintiff brings this claim on behalf of persons who reside in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia (the "Intrusion Upon Seclusion States").

77. Plaintiff had a reasonable expectation of privacy in the Private Information Defendant mishandled.

78. By failing to keep Plaintiff's Private Information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's privacy by:

    a) Intruding into Plaintiff's private affairs in a manner that would be highly offensive to a reasonable person; and

    b) Publicizing private facts about the Plaintiffs, which is highly offensive to a reasonable person.

79. Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

80. Defendant invaded Plaintiff's right to privacy and intruded into Plaintiff's private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

81. As a proximate result of such misuse and disclosures, Plaintiff's reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendants' conduct amounted to a serious invasion of Plaintiff's protected privacy interests.

82. In failing to protect Plaintiff's Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and the Class Members' rights to have such information kept confidential and private. The Plaintiff, therefore, seeks an award of damages, including punitive damages, on behalf of himself and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a class action and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members'

Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

      C.      For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage and safety and to disclose with specificity the type of PII compromised during the Data Breach;

      D.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

      E.      Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiffs and the Class;

      F.      Ordering Defendant to disseminate individualized notice of the Data Breach to all Class Members;

      G.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

      H.      For an award of punitive damages, as allowable by law;

      I.      For an award of attorneys' fees and costs, including expert witness fees;

      J.      Pre- and post-judgment interest on any amounts awarded; and

      K.      Such other and further relief as this court may deem just and proper.

Dated: August 6, 2019

Respectfully submitted,

/s/ *Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
2875 NE 191st Street, Suite 703
Aventura, FL 33180
Telephone: 305-975-3320

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice forthcoming*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
gklinger@kozonislaw.com

*Attorneys for the Plaintiff and the Proposed Classes*